UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEVIN HAYES,

      Plaintiff,

      v.

THE TOWN OF UXBRIDGE;

UXBRIDGE POLICE DEPARTMENT;

PETER EMERICK, individually and in his official
capacity as Interim Chief of Police of the Uxbridge
Police Department;

SCOTT FREITAS, individually and in his official
capacity as a former Chief of Police of the Uxbridge
Police Department;

JOSIAH MORRISSETTE, individually and in his
official capacity as an Officer of the Uxbridge Police
Department; and

THOMAS J. ALEXANDER,

      Defendants

Docket No.

_____

## COMPLAINT

# I.    Parties.

1. The Plaintiff, Kevin Hayes ("Hayes"), is an individual with a place of
   residence at 293 North Main Street, Uxbridge, Massachusetts, 01569.

2. The Town of Uxbridge ("Uxbridge") is a town incorporated in the
   Commonwealth of Massachusetts and has a principal place of business at
   21 South Main Street, Uxbridge, MA 01569.

1

3. The Uxbridge Police Department ("Uxbridge Police") has a principal place of business at 275 Douglas Street, Uxbridge, Massachusetts, 01569.

4. The Defendant, Peter Emerick ("Chief Emerick"), is a natural person who is currently Interim Chief of Police of the Uxbridge Police Department and works at 275 Douglas Street, Uxbridge, Massachusetts, 01569.

5. The Defendant, Scott Freitas ("Chief Freitas"), is a natural person who is a former Chief of Police of the Uxbridge Police Department and whose current address is not known.

6. The Defendant, Josiah Morrissette ("Officer Morrissette"), is a natural person who is currently Chief of Police of the Uxbridge Police Department and works at 275 Douglas Street, Uxbridge, Massachusetts, 01569.

7. The Defendant, Thomas J. Alexander, is a natural person whose residence is 47 Pollett Street, Cumberland, Rhode Island, 02864.

## II.   Jurisdiction.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. Venue is proper pursuant to 28 U.S.C. § 1391.

## III.   Facts.

## A.   Background.

10. Hayes moved to Uxbridge in May 2010 and purchased a home at 293 North Main Street ("293").

11. Since 2008, Danielle Gardner ("Gardner") has been Hayes' girlfriend.

12. At no time prior to the events described below has Hayes ever been arrested or accused of any crime.

13. Hayes has had a class A license to carry ("LTC") without restriction issued by the Commonwealth of Massachusetts since November 2010.

14. In order to obtain his LTC, Hayes had to complete a Basic Firearms Safety Course as mandated by 515 CMR 3.00, et seq., which he completed on or about November 2010.

15. Hayes owns a semi-automatic Ruger LCP pistol, which he purchased on March 6, 2011.

16. Pursuant M.G.L. c. 140, § 131(c), to Hayes' LTC permits him to purchase and possess pepper spray.

17. Hayes worked for the Massachusetts Department of Correction ("DOC") from September 2006 to March 2008.

18. While with the DOC, Hayes was submitted to a ten-week long academy where he was trained fully in the correct means of applying Use of Force techniques and how to avoid Use of Force.

19. He attended classes and on the job training that showed Hayes how to recognize when an individual is about to become violent and how to apply de-escalation tactics using his speech and body language.

## B.     Trespasses on Hayes' Driveway.

20. Hayes' home abuts a private dirt driveway that runs between 293 and 297 North Main Street ("297"). The driveway is solely for the use of the residents of 293 and 297.

21. The driveway is not a public throughway; the owners of 293 and 297 (whose property boundary bisects the driveway) are solely responsible for the maintenance of the driveway.

22. The right of way proceeds from North Main Street to a private right-of-way behind the properties running parallel to North Main Street, including 291 North Main Street ("291").

23. Residents of 291 can easily drive behind 293 and utilize the driveway. Nevertheless, it is undisputed that the residents of 291 have no right to use the driveway.

24. Regardless of the fact that the driveway is not a public through-way, people frequently had used the driveway to access North Main Street.

25. Those using the driveway were often inconsiderate of the fact that the driveway was private property and frequently vandalized Hayes' property and verbally assaulted Hayes when he asked people not to use the driveway.

3

26. In November 2010, Hayes called the police after Shayla Norris ("Norris") trespassed onto Hayes' property. The responding officer, Officer Sullivan, advised Hayes to install "No Trespassing" signs on his property, which he did.

27. Hayes was thereafter involved in an incident with Thomas J. Alexander ("Alexander"), a 22-year-old resident of Cumberland, Rhode Island.

28. Alexander frequently visited his girlfriend, Norris, who lived at 291 but did not have the right to use the private driveway abutting Hayes's home.

29. At approximately 11:00 p.m. on April 14, 2011, Hayes was checking his mail (having been at work since 11:00 a.m. that morning) and noticed a vehicle driving down the driveway.

30. Hayes walked towards the vehicle and politely knocked on the driver's side window.

31. Hayes calmly informed the driver, Alexander, that the driveway was a private street.

32. In response, Alexander was angered, and he started hurling expletives at Hayes.

33. Hayes calmly stated that there were "No Trespassing" signs posted and to not use the driveway in the future.

34. This enraged Alexander all the more: both he and Norris (who was in the passenger seat) started yelling at Hayes again.

35. Alexander then pushed open the driver's side door, which hit Hayes and forced him backwards.

36. Hayes assumed a defensive posture. Alexander, who remained in the vehicle, slammed the driver's side door shut, spun his tires—tearing up part of the driveway—and sped forward abruptly. Alexander's vehicle jumped the sidewalk into the street. Alexander then put the vehicle in reverse and backed the vehicle towards Hayes, who was standing approximately ten feet back from North Main Street. Alexander stopped and opened his car door.

37. Relying on his training again, Hayes took out his cell phone and stated in an authoritative tone that he had phoned the police and "please do not

4

make any more forward progression or I will be forced to defend myself." Alexander slammed his door and drove away.

38. Hayes phoned the Uxbridge police department and gave a verbal report of the incident to the officer on the phone. He later repeated the incident to the responding officer, Officer Morrissette.

39. The next day Hayes went to the Uxbridge Police Department to drop off a statement of the incident that he had written at Officer Morrissette's request. Officer Morrissette told Hayes that Alexander was later found and admitted to the trespassing, but would not be charged because Alexander said that Hayes had yelled at him.

40. Officer Morrissette then told Hayes that he was the aggressor and that he had crafted his report such that Hayes would be unable to press charges himself. Hayes was denied a copy of Officer Morrissette's report.

41. Several days following this incident, Hayes again saw Alexander spinning his tires and tearing up the driveway. This time, Hayes took a photograph of the vehicle's license plate and reported the incident to the Uxbridge Police. To ensure that a complaint was filed against Alexander, Hayes spoke with then-Lieutenant Emerick, who stated that he would follow up. Alexander was charged with assault and battery and criminal trespassing. Alexander was advised not to enter onto 293.

## C.    Hayes' false arrest.

42. Around this time, Hayes installed a home security system with cameras on the side and rear of his home to monitor any improper use of the driveway.

43. On May 20, 2011, at approximately 9:00 p.m., Hayes was cooking dinner with Gardner when he heard a knock on his door.

44. Alexander was at the door—despite the prohibition against him entering onto 293.

45. Alexander demanded to know why Hayes had filed a criminal complaint against him. He stated that he would be unable to work at his security job if Hayes did not drop the charges. Hayes refused.

46. At this point, Alexander stated that if Hayes did not drop the charges, he would "kick [Hayes's] ass." Hayes proceeded back into the home and told Gardner to phone the police.

47. Alexander then entered through the doorway of Hayes' home and was standing in the living room and screaming.

48. Hayes grabbed a fogger-style can of pepper spray that he had purchased for home defense and a strobe light and proceeded back into the living room.

49. Again relying on his DOC training, Hayes told Alexander in an authoritative voice to exit his home.

50. Alexander charged towards Hayes, and Hayes sprayed Alexander with the pepper spray.

51. Alexander ran out of the home and threatened in a loud voice: "I'm going to come back in there and fucking kill you."

52. Alexander ran to the entrance of the home again and Hayes again pepper sprayed Alexander.

53. Alexander at this time walked into the yard and did not leave the property.

54. Hayes followed Alexander outside and used the strobe light to coax Alexander off of the property, but never touched Alexander.

55. Soon thereafter, Officer Morrissette and other Uxbridge police officers arrived.

56. Officer Morrissette was the first on the scene, followed by Officer Sullivan and Sergeant Wilson.

57. Officer Morissette requested an ambulance to see to Alexander. In response to Officer Morrissette's attempts to assist Alexander, Alexander assaulted Officer Morrissette and would not let him come near.

58. When the Uxbridge Police arrived, Norris ran onto the property from 291 when she saw Alexander exit 293.

59. Officer Morrissette asked Norris for a description of the incident.

60. Norris, who was not an eyewitness to the events inside 293, stated that Alexander had been pepper sprayed by Hayes, but then falsely claimed that Hayes continued to spray Alexander while Alexander was lying prone on the ground in the yard near the edge of the property.

61. Officer Morrissette then asked Hayes for his version of events but never asked Hayes whether he had sprayed Alexander while he was on the ground.

62. Based solely on Norris's second-hand statement, Officer Morrissette believed that Hayes had sprayed and beaten Alexander while he was on the ground and that Hayes acted in excess of self-defense.

63. Officer Morrissette proceeded to arrest Hayes.

64. Hayes was handcuffed and the items in his possession were seized. In particular, the can of pepper spray was seized as evidence. Additionally, Hayes informed Officer Morrissette that he had his Ruger on his person. The Ruger was seized as well.

65. When he was arrested, Hayes informed Officer Morrisette of the camera system attached to the house and offered the video of the incident to the Uxbridge Police.

66. Officer Morrissette declined to view the tape and insisted that Hayes "went overboard."

67. Hayes then offered the video to assisting Sergeant Wilson, who also declined and insisted that Hayes had gone "overboard."

68. Alexander was examined by the EMTs called by Officer Morrissette and was offered transport to a hospital for treatment, but Alexander refused treatment.

69. Alexander and Norris left the scene after Hayes was arrested.

70. Gardner was present for the entire incident, although she remained inside the home until Alexander was subdued, and viewed Hayes' arrest.

71. Neither Officer Morrissette nor Sergeant Wilson questioned Gardner about the events.

72. Hayes and Gardner were never offered medical treatment during the entire course of Hayes's arrest, though they were both also feeling the effects of the pepper spray.

73. At the police station, Hayes informed Officer Morrissette that he had a lung infection for which his medication was at home.

74. Hayes was not treated and suffered from painful coughing the entire time he was incarcerated.

75. Hayes was booked at the Uxbridge Police Department and released on bail.

76. At approximately 1:30 a.m. following the incident and Hayes' release, Hayes called the Uxbridge Police and informed them that he had a video recording system at his home and that he had video of the incident.

77. Hayes offered yet again to deliver a copy of this video to the Uxbridge Police so that Officer Morrissette could view it, but Hayes was told that they did not want to view it.

78. Instead, Hayes was charged with Assault and Battery with a Dangerous Weapon under M.G.L. c. 265, § 15A, a felony, and misdemeanor Assault and Battery under M.G.L. c. 265, § 13A.

79. Despite having threatened Hayes with bodily harm and entered his home twice in violation of the court's order and with malicious intent, Alexander was only charged with criminal trespassing.

80. Hayes' security video of the incident paints a much different picture than that described in Officer Morrissette's report.

81. The video is recorded from the side of the home (as it is intended to record vehicles using the driveway), although a segment of the front lawn can also be seen.

82. A video taken earlier in the evening clearly shows Alexander trespassing on Hayes' property.

83. Contrary to the allegation that Hayes had pepper sprayed Alexander on the lawn, the video clearly demonstrates that Hayes never sprayed Alexander while he was outside the home.

84. Ultimately, the prosecutor viewed the video of the incident. In the face of this exculpatory evidence, the Commonwealth promptly dropped the charges against Hayes.

## D.   Unlawful Deprivation of Hayes' LTC.

85. Hayes never burnished the Ruger or even mentioned that he was carrying it on his person during the incident with Alexander.

8

86. Hayes volunteered to Officer Morrissette that he was carrying it when he was being arrested.

87. Hayes was advised in writing at the time of his arrest that because he was arrested for a felony while in possession of a firearm that his LTC was suspended.

88. Because Hayes did not meet any of the disqualifying criteria listed in M.G.L. c. 140, § 131(d)(i)-(vii), the only possible criterion on which his license could have been suspended is if he had been deemed to no longer be "a suitable person to possess such license."

89. Following the dismissal of the charges, the Uxbridge Police refused to reinstate his LTC.

90. The evidence of Hayes' innocence was incontrovertible, but the Uxbridge Police maintained that Hayes was "no longer a suitable person to possess such license."

91. In order to reacquire his LTC, Hayes was forced to retain counsel and bring an action in the Uxbridge District Court under M.G.L. c. 140, § 131(f), Hayes v. Chief Freitas, Uxbridge District Court docket number 11-65-CV-0361.

92. A hearing was held in that case on October 25, 2011.

93. On November 15, 2011, the court (Locke, J.) adopted Hayes' proposed findings of fact in their entirety and found that "there was no reasonable grounds for suspending or revoking the Respondent's license to carry a firearm and that the Petitioner is not prohibited by law from possessing same."

## IV.  Claims

**Count I**
**Violation of 42 U.S.C. § 1983**
**Against Uxbridge, Uxbridge Police Department,**
**Emerick, Freitas, and Morrissette**

94. The Plaintiff realleges the foregoing paragraphs.

95. The conduct of the Officers occurred in the course of their official duties and under color of state law.

96. The actions of the Uxbridge Police, Chief Emerick, Chief Freitas, and Officer Morrissette were performed in accordance with a custom or policy of Uxbridge.

97. The Defendants' conduct deprived Hayes of rights, privileges or immunities secured by the Constitution or laws of the United States.

98. The Defendants caused Hayes to be arrested without probable cause.

99. The Defendants intentionally or recklessly with callous indifference to Hayes' rights deprived Hayes of his property, specifically the Ruger and pepper spray.

100. As a result of the Defendants' actions, Hayes has been harmed.

**Count II**
**Violation of M.G.L. c. 12, §§ 11H and 11I**
**Against Uxbridge Police Department, Emerick, Freitas, and Morrissette**

101. The Plaintiff realleges the foregoing paragraphs.

102. The Defendants' actions interfered or attempted to interfere with Hayes' exercise or enjoyment of rights secured by the Constitution or laws of the United States.

103. The Defendants' actions interfered or attempted to interfere with Hayes' exercise or enjoyment of rights secured by the Constitution or laws of the Commonwealth of Massachusetts.

104. The Defendants' interference or attempted interference was accomplished via threats, intimidation, or coercion.

105. As a result of the Defendants' actions, Hayes has been harmed.

**Count III**
**False Arrest**
**Against Uxbridge Police Department, Emerick, Freitas, and Morrissette**

106. The Plaintiff realleges the foregoing paragraphs.

107. On May 20, 2011, the Defendants arrested Hayes.

108. That arrest was without probable cause.

109.     As a result of the Defendants' actions, Hayes has been harmed.

## Count IV
## False Imprisonment
## Against Uxbridge Police Department, Emerick, Freitas, and Morrissette

110.     The Plaintiff realleges the foregoing paragraphs.

111.     On May 20, 2011, the Defendants arrested Hayes.

112.     At that time, the Defendants unlawfully confined Hayes.

113.     At that time, the Defendants intentionally confined Hayes.

114.     Hayes was conscious of the confinement and harmed by the confinement.

## Count V
## Malicious Prosecution
## Against Uxbridge Police Department, Emerick, Freitas, and Morrissette

115.     The Plaintiff realleges the foregoing paragraphs.

116.     The Defendants maliciously instituted criminal charges against Hayes.

117.     The Defendants lacked probable cause to arrest or charge Hayes.

118.     The criminal action was terminated in Hayes's favor.

119.     As a result of the Defendants' actions, Hayes has been harmed.

## Count VI
## Assault
## Against Alexander

120.     The Plaintiff realleges the foregoing paragraphs.

121.     On several occasions, Alexander intentionally attempted to hit Hayes physically or with his vehicle.

122.     Alexander's actions placed Hayes in the imminent fear of harm.

123.     As a result of the Defendant's actions, Hayes has been harmed.

**Count VII**
**Battery**
**Against Alexander**

124.    The Plaintiff realleges the foregoing paragraphs.

125.    Alexander intentionally used force with his vehicle against Hayes by hitting him with his car door.

126.    Alexander's use of force was without justification or excuse.

127.    As a result of the Defendant's actions, Hayes has been harmed.

**Count VIII**
**Trespass to Property**
**Against Alexander**

128.    The Plaintiff realleges the foregoing paragraphs.

129.    Hayes owns 293 North Main Street, Uxbridge, Massachusetts, including rights to the driveway.

130.    On several occasions, Alexander has entered Hayes's property.

131.    On those occasions, Alexander did not have Hayes's permission to enter his property.

132.    As a result of entering onto his property, Hayes has been harmed.

**Count IX**
**Intentional Infliction of Emotional Distress**
**Against Alexander**

133.    The Plaintiff realleges the foregoing paragraphs.

134.    Alexander intended to inflict emotional distress or knew or should have known that emotional distress was likely to result from his conduct.

135.    Alexander's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized society.

136.    Alexander's conduct caused Hayes emotional distress.

12

137.    Hayes' emotional distress was severe and of a nature that no reasonable person could be expected to endure it.

## V.    Requests for Relief.

The Plaintiff requests that this Court:

1.  Find for the Plaintiff on all of his claims;

2.  Award the Plaintiff monetary damages;

3.  Award the Plaintiff his attorneys' fees and costs pursuant to M.G.L. c. 12, § 11I;

4.  Award the Plaintiff his attorneys' fees, costs, and expert witness fees pursuant to 42 U.S.C. § 1983(b) and (c);

5.  Award the Plaintiff his costs pursuant to Fed. R. Civ. P. 54(d); and

6.  Grant any other relief that this Court deems just and proper.

## VI.   Jury Demand.

The Plaintiff demands a jury trial on all matters so triable.

Respectfully submitted,

KEVIN HAYES,

By his attorney,

/s/ Patrick M. Groulx
Patrick M. Groulx
Polis Legal
P.O. Box 760656
Melrose, MA 02176
Bar No. NHB07294
Ph: (978) 549-3124
Fax: (617) 500-9955
E-mail: pgroulx@polislegal.com

Date: August 28, 2013