UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:13-cv-40102-TSH

| | |
|---|---|
| KEVIN HAYES,<br>        Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| THE TOWN OF UXBRIDGE,<br>UXBRIDGE POLICE DEPARTMENT,<br>PETER EMERICK, individually and in his<br>official capacity as Interim Chief of Police<br>of the Uxbridge Police Department,<br>SCOTT FREITAS, individually and in his<br>official capacity as a former Chief of Police<br>of the Uxbridge Police Department,<br>JOSIAH MORRISSETTE, individually and<br>in his official capacity as an Officer of the<br>Uxbridge Police Department, and<br>THOMAS J. ALEXANDER,<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS, THE TOWN OF UXBRIDGE, "UXBRIDGE POLICE DEPARTMENT," PETER EMERICK, SCOTT FREITAS, AND JOSIAH MORISSETTE'S, MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Now come the defendants, the Town of Uxbridge ("Uxbridge" or the "Town"), "Uxbridge Police Department," Peter Emerick ("Lieutenant Emerick"), Scott Freitas ("Chief Freitas"), and Josiah Morrissette ("Officer Morrissette") (collectively, "defendants") and hereby respectfully submit this memorandum of law in support of defendants' motion to dismiss. As set forth below, plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## BACKGROUND

Solely for purposes of the instant motion, defendants accept the facts, as opposed to conclusions, set forth in the Complaint as true.

## STANDARD OF REVIEW

The Supreme Court of the United States has confirmed the standard of review of a motion to dismiss announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).

## ARGUMENT

A.    The Uxbridge Police Department is Not a Proper Party to this Action.

The Complaint must be dismissed to the extent that it purports to state claims against the Uxbridge Police Department. It is not a "body corporate and politic" that is independently subject to suit. In *Murphy v. Town of Natick*, 516 F. Supp. 2d 153 (D. Mass. 2007), the Court explained:

> The Natick Police Department is not a body politic and corporate as cases filed against police departments and their chiefs under the Massachusetts Tort Claims Act, Mass. Gen. Laws. c. 258, the Massachusetts Civil Rights Act, Mass. Gen. Laws c. 12, § 11I, and the Federal Civil Rights Act, 42 U.S.C. § 1983, illustrate.

> Under both Massachusetts and federal law, a suit against a municipal police department or its chief (in his or her official capacity) is deemed to be a suit against the municipality itself.

*Id.* at 158.  See also, *Curran v. City of Boston*, 777 F. Supp. 116, 120 (D. Mass. 1991) (holding that the Boston Police Department was a "non-person" and, as such, "not a suitable entity"); *Henschel v. Worcester Police Dept.*, 445 F.2d 624 (1st Cir. 1971).  As such, the Complaint should be dismissed as against the Uxbridge Police Department.

B.    Count I Fails to State a Claim Upon Which Relief Can Be Granted.

   1.    Plaintiff's Official Capacity Claims Should Be Dismissed.

Count I alleges violation of 42 U.S.C. § 1983 and is pled as against all defendants.  The caption of the Complaint indicates that Lieutenant Emerick, Chief Freitas, and Officer Morrissette are sued in both their official and individual capacities.  Plaintiff's official capacity claims against these individuals are effectively claims against the Town.  See *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  Defendants submit that the official capacity claims are duplicative of the claims against the Town and should be dismissed.  They fail to state independent claims upon which relief can be granted.

   2.    Count I Fails to Adequately Allege the Existence of a Municipal Custom or Policy.

It is black letter law that 42 U.S.C. 1983 does not, in and of itself, create substantive rights.  Rather, it simply provides a vehicle by which claims may be brought for alleged violations of rights secured by the United States Constitution.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994); *Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir. 1991), *citing, Parratt v. Taylor,* 451 U.S. 527, 535 (1981).  To proceed with a claim under 42 U.S.C. 1983, a plaintiff must first establish that a defendant is acting under color of state law.  The plaintiff must next prove that the alleged

wrongful conduct resulted in a deprivation of rights secured by the United States Constitution or federal law.   Most important in this regard, mere violations of state law do <u>not</u> create constitutional claims.   *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1ˢᵗ Cir. 1982).

It is clear that a municipality cannot be liable on a theory of *respondeat superior*, but, rather, may only be liable upon allegations and proof of impermissible policy or custom.   *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978).   The Town submits that the Complaint is devoid of any factual support for the same.   In the absence of well pled facts that support a reasonable inference that the Town employed an unconstitutional municipal policy or custom, there can be no claim for municipal liability under 42 U.S.C. § 1983.   *Id.; Baron v. Hickey,* 242 F. Supp. 2d 66, 75-76 (D. Mass. 2003).

The *Monell* Court held that municipal liability under § 1983 can be imposed <u>only</u> where the municipality itself "causes" the alleged constitutional violation.   *Monell, supra,* 436 U.S. at 658, 692; see also, *DiRico v. City of Quincy,* 404 F.3d 464, 469, n.12 (1ˢᵗ Cir. 2005).   The plaintiff bears the burden of demonstrating the existence of a policy or custom and a "direct causal link" between that policy or custom and the alleged constitutional violation.   *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Santiago v. Fenton*, 891 F.2d 373, 381-382 (1ˢᵗ Cir. 1989).

The Court further clarified its position in *Pembaur v. Cincinnati,* 475 U.S. 469, 483-484 (1986) holding:

> [M]unicipal liability under § 1983 attaches where -- and only where -- a <u>deliberate choice</u> to follow a course of action is made from among various alternatives by city policy makers.   See also *Oklahoma City v. Tuttle,* 471 U.S. at 823 (opinion of Rehnquist, J.). Only where a failure to train reflects a "single deliberate" or "conscious" choice by a municipality -- a "policy" as defined by our prior cases" can the city be liable for such a failure under § 1983.

*Id.*

As set forth above, "municipalities are only liable for unconstitutional policies or practices." See *Opalenik, et al. v. LaBrie, et al.*, Civil Action No. 11-cv-30065-KPN (D. Mass.), Document No. 108 at 13.  The Complaint alleges, "The actions of the Uxbridge Police, Chief Emerick, Chief Freitas, and Officer Morrissette were performed in accordance with a custom or policy of Uxbridge."  Complaint at ¶ 96.  The alleged custom or policy is not described and there are no facts alleged in the Complaint from which a municipal custom or policy can reasonably inferred.  The conclusionary allegation quoted above is not entitled to an assumption of truth and cannot support a claim for *Monell* liability.  See *Iqbal*, 556 U.S. at 678; *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011) ("naked assertions devoid of further enhancement need not be accepted.") (internal quotation marks omitted; citations omitted).  Therefore, Count I should be dismissed.

> 3.    Count I Does Not Rest On an Underlying Constitutional Violation.

Count I rests on two alleged violations of plaintiff's constitutional rights.  First, plaintiff alleges that his arrest on May 20, 2011, was not supported by probable cause.  See Complaint at ¶ 98.  Second, he alleges deprivation of his property, "specifically the Ruger and pepper spray." See Complaint at ¶ 99.  As discussed below, Count I fails to state a claim upon which relief can be granted because the Complaint does not support either allegation.

> a.    Plaintiff's Arrest Was Supported By Probable Cause.

Count I fails to state a claim for false arrest claim pursuant to 42 U.S.C. § 1983 because plaintiff's arrest was supported by probable cause.  It is beyond dispute that "[p]robable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *United States v. Vongkaysone*, 434 F.3d 68, 73-74 (1st Cir. 2006).

The Complaint alleges that plaintiff was charged with, "Assault and Battery with a Dangerous Weapon under M.G.L. c. 265, § 15A, a felony, and misdemeanor Assault and Battery under M.G.L. c. 265, § 13A." See Complaint at ¶ 78. M.G.L. c. 265, § 15A provides in part:

> Whoever commits an assault and battery upon another by means of a dangerous weapon shall be punished by imprisonment in the state prison for not more than 10 years or in the house of correction for not more than 21/2 years, or by a fine of not more than $5,000, or by both such fine and imprisonment.

M.G.L. c. 265, § 15A(b). Pepper spray is a dangerous weapon. See generally, *Boston Hous. Auth. v. Bruno*, 58 Mass. App. Ct. 486, 487 (2003). M.G.L. c. 265, § 13A provides, in part, "Whoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than 21/2 years in a house of correction or by a fine of not more than $1,000." M.G.L. c. 265, § 13A(a). As set forth in the Complaint, there was probable cause to arrest plaintiff for both these crimes.

The Complaint alleges, in part:

> 58.   When Uxbridge Police arrived, Norris ran onto the property from 291 when she saw Alexander exit 293.
>
> 59.   Officer Morrissette asked Norris for a description of the incident.
>
> 60.   Norris, who was not an eyewitness to the events inside 293, stated that Alexander had been pepper sprayed by Hayes, but then falsely claimed that Hayes continued to pepper spray Alexander while Alexander was lying prone on the ground in the yard near the edge of the property.
>
> 61.   Officer Morrissette then asked Hayes for his version of events but never asked Hayes whether he had sprayed Alexander while he was on the ground.

Complaint at ¶¶ 58-61. The Complaint itself corroborates important aspects of Norris' alleged account. Plaintiff did "pepper spray" Alexander, albeit in plaintiff's home. See Complaint at ¶¶ 48-50, 52. Plaintiff did pursue Alexander outside once Alexander had exited plaintiff's home

and "used the strobe light to coax Alexander off the property."  See Complaint at ¶ 54.  Contrast, *Commonwealth v. Cataldo*, 423 Mass. 318, 321 (1996) ("A person may defend oneself with the use of nondeadly force if he or she reasonably fears for his or her personal safety").  Plaintiff remained in possession of the pepper spray, in addition to the strobe light, while he "coaxed" Alexander.  See Complaint at ¶¶ 54, 64.  He was also carrying a Ruger pistol, as he informed Officer Morrissette.  See Complaint at ¶ 64.  Norris' statement, taken together with the corroborating circumstances set forth in the Complaint, demonstrate the existence of probable cause to arrest plaintiff.  See *Forest v. Pawtucket Police Dep't*, 377 F.3d 52, 56-57 (1st Cir. 2004).  Cf. *Bliss v. The City of Pittsfield*, C.A. No. 12-cv-30166-MAP (D. Mass. September 30, 2013), Document No. 16 at 2 ("Many of the crucial details were also confirmed by Plaintiff's alleged co-conspirator . . .").

Further, to the extent that plaintiff asserts that Norris statement should have been discounted or that further investigation (such as viewing plaintiff's surveillance camera recordings) should have occurred before plaintiff was arrested, his claim remains infirm.  The First Circuit has "rejected the proposition that a police officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest."  *Holder v. Town of Sandown*, 585 F.3d 500, 505 (1st Cir. 2009) (citation omitted).  Rather, "A police officer "may terminate his investigation when he accumulates facts that demonstrate probable cause[.]"  *Id*. (internal quotation marks, alterations and citations omitted).  "The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable.  Their conclusion that probable cause exists need only be reasonable."  *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009) (internal quotation marks and citation omitted).  Most importantly, "[J]ust because a person validly arrested is later discovered to be innocent does not

make an arrest 'unlawful,' and does not give rise to a § 1983 claim against the officer for failure to investigate." *Franco-de Jerez v. Burgos*, 876 F.2d 1030 (1st Cir. 1989), quoting, *Rodriguez v. Ritchey*, 556 F.2d 1185, 1190-1192 (5th Cir. 1977) (internal quotation marks omitted). As alleged, the facts in Officer Morrissette's possession at the time he arrested plaintiff demonstrated the existence of probable cause and Count I fails to state a claim for false arrest upon which relief can be granted.

      b.    <u>Plaintiff Was Not Unconstitutionally Deprived of "the Ruger and the Pepper Spray</u>."

It appears that Count I may attempt to state a claim resting on alleged violation of plaintiff's right to procedural due process inasmuch as it alleges the deprivation of plaintiff's property, "the Ruger and pepper spray." This allegation rests on the alleged suspension and failure to reinstate plaintiff's license to carry a firearm. See Complaint at ¶¶ 87-90. The Complaint does not identify a specific individual who is alleged to have suspended or revoked plaintiff's license but attributes it to "the Uxbridge Police." See *Id*. Ultimately, plaintiff's procedural due process claim, if any, fails because no pre-deprivation process was required with respect to the suspension or revocation of plaintiff's license to carry a firearm and because the Commonwealth of Massachusetts provides an adequate post-deprivation remedy. See *Hightower v. City of Boston*, 693 F.3d 61, 84-87 (1st Cir. 2012). See also, *Hadfield v. McDonough*, 407 F.3d 11, 19-20 (1st Cir. 2005); *Brown v. Hot, Sexy and Safer Productions*, Inc., 68 F.3d 525, 536 (1st Cir. 1995). Further, plaintiff has no federal right to demand that the Town conform to state law in suspending or revoking his license. See *Gardner v. Vespia*, 252 F.3d 500, 503 (1st Cir. 2001).

      4.    <u>Plaintiff's Claims are Barred by the Doctrine of Qualified Immunity</u>.

To the extent that Count I is read to state claims against the individual defendants in their individual capacities, the doctrine of qualified immunity bars the imposition of liability.

a.    Plaintiff's Claim Against Officer Morrissette, if any, is Barred By the Doctrine of Qualified Immunity.

Qualified immunity is intended to shield public officials in the course of performing discretionary acts "from civil damages liability as long as their actions could reasonably have been thought constant with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987).  The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive.  See, *Saucier v. Katz,* 533 U.S. 194, 200 (2001).  "Indeed, we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery.'" *Pearson v. Callahan*, 555 U.S. 223, 231-232 (2009), quoting, *Anderson v. Creighton,* 483 U.S. 635, 640, n.2 (1987).

Qualified immunity shields government officials from liability for civil damages when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  The relevant question, then, is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir. 1991).  This qualified immunity standard leaves "ample room for mistaken judgments." *Malley v. Briggs,* 475 U.S. 335, 343 (1986).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed

questions of law and fact.'"  *Pearson*, 555 U.S. at 231, quoting, *Groh v. Ramirez,* 540 U.S. 551, 567, (2004) (Kennedy, J., dissenting) (further citation omitted).  If no constitutional right is violated, a defendant is entitled to qualified immunity as a matter of law.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Following *Pearson*, *supra*, the First Circuit abandoned its former three-part qualified immunity analysis and has adopted the two-part test articulated in *Saucier* and *Pearson*. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).  "A court must decide:  (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Id*. at 268.  But see, *Id*. (explaining that the "clearly established" step has two aspects).  As explained by *Pearson* and *Maldonado*, it is also now permissible to avoid the first step of the analysis in appropriate cases.  *Pearson*, 555 U.S. at 232-239; *Maldonado*, 568 F.3d at 269-270. "The salient question is whether the state of the law at the time would have given a reasonably competent officer clear notice that what he was doing was unconstitutional."  *Mlodzinski v. Lewis*, 648 F.3d 24, 33 (1st Cir. 2011) (citations omitted; internal quotation marks omitted).

i.    <u>Officer Morrissette is Entitled to Qualified Immunity as a Matter of Law</u>.

As set forth above, Count I does not make out an alleged constitutional violation because plaintiff's arrest was supported by probable cause.  There is no allegation from which it can be inferred that Officer Morrissette had any role in the suspension or revocation of plaintiff's license to carry a firearm or that he had the authority to take any action with respect to it.  But see, M.G.L. c. 140, § 121 (definition of "licensing authority").  Therefore, as to Officer Morrissette, Count I fails at the first step of the qualified immunity analysis and should be dismissed. See *Saucier,* 533 U.S. at 201.

      ii.      <u>A Reasonable Officer Could Believe that Probable Cause Existed to Arrest Plaintiff</u>.

As alleged, the alleged unlawfulness of plaintiff's arrest would not "have been apparent to an objectively reasonable officer" standing in defendants' shoes. *Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004).

> Qualified immunity, however, requires a somewhat lesser showing. For that purpose, the operative inquiry is not whether the defendant's actions actually abridged some constitutional right, see *Quintero de Quintero v. Aponte-Roque*, 974 F.2d 226, 228 (1st Cir. 1992) but, rather, whether those actions were obviously inconsistent with that right, see *Camilo-Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir. 1999). Thus, <u>in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach</u>. See *Ricci v. Urso*, 974 F.2d 5, 7 (1st Cir. 1992).

*Id.* (emphasis added). Here, the presence of probable cause was, minimally, arguable. Therefore, Officer Morrissette is entitled to qualified immunity and Count I should be dismissed.

      b.      <u>Plaintiffs' Claims Against Lieutenant Emerick and Chief Freitas are Barred by the Doctrine of Qualified Immunity</u>.

As set forth above, the Complaint does not make out a claim for the violation of plaintiff's constitutional rights and, therefore, Lieutenant Emerick and Chief Freitas are entitled to qualified immunity. See *Saucier*, 533 U.S. at 201.

      i.      <u>As to Plaintiff's Arrest</u>.

Without waiving the foregoing, the Complaint does not allege any facts from which it can be inferred that Lieutenant Emerick or Chief Freitas either arrested plaintiff or ordered another officer to arrest plaintiff. Based on the facts as alleged a reasonable supervisor would not understand that either Lieutenant Emerick or Chief Freitas violated plaintiff's constitutional rights.

> "Section 1983 does not impose purely supervisory liability; it aims at persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrongdoing may be held liable." Martinez-Vélez, 506 F.3d at 41 (internal citation and quotation marks omitted). This rule means [defendants] prevail unless they actually did something wrong.

*Cordero-Suárez v. Rodríguez*, 689 F.3d 77, 82 (1st Cir. 2012).

Further, it is clear that "supervisory liability" as it has been previously understood is no longer viable as a species of constitutional tort. In <u>Iqbal</u>, the Supreme Court of the United States re-affirmed that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id*. at 676. However, the Court went further, stating, "In a § 1983 suit or a *Bivens* action--where masters do not answer for the torts of their servants--the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. at 677. Writing in dissent, Justice Souter stated, "Lest there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects." *Id*. at 693, quoting, *Id*. at 683. Given the state of the law and the absence of facts to support Count I, Lieutenant Emerick and Chief Freitas are entitled to qualified immunity.

ii.      <u>As to Plaintiff's License to Carry a Firearm</u>.

Plaintiff's claims against each individual must be independently analyzed. See generally, *Iqbal*, 556 U.S. at 677. There are no facts pled from which it can be inferred that Lieutenant Emerick had any role in the suspension or revocation of plaintiff's license to carry a firearm. See

Complaint at ¶¶ 85-93.  Therefore, he is entitled to qualified immunity as a matter of law.  See

*Iqbal*, 556 U.S. at 677-678; *Saucier*, 533 U.S. at 201.

It appears from the Complaint that Chief Freitas suspended and revoked plaintiff's

license.  See Complaint at ¶ 91.  A reasonable chief of police could conclude that plaintiff was

not a "suitable person" to possess a license to carry a firearm.  See Complaint at ¶ 90.  See also,

M.G.L. c. 140, § 131(f).  Plaintiff had been arrested based on probable cause for the felony of

Assault and Battery with a Dangerous Weapon.  See *Id*. at 78, 87.  His judgment was also subject

to legitimate question.  See Complaint at ¶¶ 52-54.

It was not clearly established at the time of the alleged suspension and revocation that

such would violate plaintiff's constitutional rights.

> The Massachusetts courts have seldom had occasion to interpret the suitable
> person requirement. The statute itself does not define what constitutes "a suitable
> person to be issued" a firearms license. Mass. Gen. Laws ch. 140, § 131(d). In a
> series of pre-*Heller* cases, Massachusetts courts have stated that "the licensing
> authority is given considerable latitude" in determining who is a suitable person.
> *Ruggiero v. Police Comm'r*, 18 Mass. App. Ct. 256, 464 N.E.2d 104, 107 (Mass.
> App. Ct. 1984); accord *Howard v. Chief of Police*, 59 Mass. App. Ct. 901, 794
> N.E.2d 604, 606 (Mass. App. Ct. 2003) ("The 'suitable person' standard vests in
> the chief broad discretion or 'considerable latitude.'" (quoting *Ruggiero*, 464
> N.E.2d at 107)); *Godfrey v. Chief of Police*, 35 Mass. App. Ct. 42, 616 N.E.2d
> 485, 487 (Mass. App. Ct. 1993) (same); *MacNutt v. Police Comm'r*, 30 Mass.
> App. Ct. 632, 572 N.E.2d 577, 580 (Mass. App. Ct. 1991) (noting "[t]he broad
> grant of discretion implicit in a statute which lacks guidelines").

*Hightower*, 693 F.3d at 78-79 (footnotes omitted).  Further, it should be noted that at the time of

the suspension and revocation at issue, no Massachusetts appellate court had considered the

"suitable person" requirement in the context of *District of Columbia v. Heller*, 544 U.S. 570

(2008), and *McDonald v. City of Chicago*, 561 U.S. 3025 (2010).  See *Hightower*, 693 F.3d at

79.  Under the circumstances as alleged, it would not be clear to a reasonable official that the

suspension or revocation of plaintiff's license to carry a firearm was "arbitrary or capricious" or

violated plaintiff's constitutional rights.   Cf. *Id.* at 79.   Therefore, the doctrine of qualified immunity precludes the imposition of liability.

B.      <u>Count II Fails to State a Claim Upon Which Relief Can Be Granted.</u>

Count II is pled as against "Uxbridge Police Department," Lieutenant Emerick, Chief Freitas, and Officer Morrissette and purports to state claims pursuant to M.G.L. c. 12, §§ 11H[1] and 11I.   It fails to state a claim against any of these defendants upon which relief can be granted.

1.      <u>Only "Persons" May Be Held Liable Pursuant to M.G.L. c. 12, § 11I.</u>

As set forth above, plaintiff's claims as against the "Uxbridge Police Department" are properly construed, if at all, as claims against the Town.   It is undisputable that a municipality (or its police department) cannot be held liable under M.G.L. c. 12, § 11I because it is not a "person" as defined by M.G.L. c. 4, § 7.   *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591-593 (2001).   Therefore, Count II fails to state a claim upon which relief can be granted as against the Town.

2.      <u>Count II Fails to State Claims Against Lieutenant Emerick, Chief Freitas, and Officer Morrissette.</u>

In order to support a claim under M.G.L. c. 12, § 11I, a plaintiff bears the burden of proving that:  "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'"  *Bally v. Northeastern Univ.*, 403 Mass. 713, 717 (1989).  M.G.L. c.

---

[1] M.G.L. c. 12, § 11H does not provide a private cause of action.  See M.G.L. c. 12, § 11H.  Rather, it allows the Attorney General to bring an action for injunctive or other equitable relief.  See *Id.*

12, § 11I, was enacted to provide a remedy co-extensive with 42 U.S.C. § 1983 with the exception of the state action requirement.  See *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 822-823 (1985).  It "was not intended to create a 'vast constitutional tort'…." *Haufler v. Zotos*, 446 Mass. 489, 504-505 (2006), *quoting*, *Bell v. Mazza*, 394 Mass. 176, 182 (1985).

Perhaps the most significant difference between claims brought pursuant to M.G.L. c. 12, § 11I and 42 U.S.C. § 1983, is the unique requirement, pursuant to c. 12, § 11I, that the civil rights violation occur by way of "threats, intimidation, or coercion."  "Threat" has been held to "involve the intentional exertion of pressure to make another fear or apprehensive of injury or harm."  *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474 (1994).  "Intimidation" has been defined as the creation of fear to compel conduct, and "coercion" to be the active domination of another's will.  *Id.*; see also *Dean v. Dempsey,* 403 Mass. 468 (1988).

However, "[n]ot every violation of law is a violation of the state Civil Rights Act.  A direct violation of a person's right does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act."  *Longval v. Commissioner of Correction*, 404 Mass. 325, 333 (1989), *citing, Pheasant Ridge Assoscs. Limited Partnership v. Burlington*, 399 Mass. 771, 781 (1987).  See *id.* ("[W]e see no coercion, within the meaning of the State Civil Rights Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action").

There is a complete absence of factual allegations that the plaintiff was subjected to "threats, intimidation, or coercion" within the meaning of M.G.L. c. 12, § 11I.  Lieutenant Emerick and Chief Freitas are not alleged to have taken any action against plaintiff.  At best,

from plaintiff's point of view, Officer Morrissette is alleged to have committed a direct violation of plaintiff's rights.  Therefore, Count II must be dismissed.

> 3.    The Doctrine of Qualified Immunity Precludes the Imposition of Liability.

The qualified immunity analysis under M.G.L. c. 12, § 11I is the same as that under 42 U.S.C. § 1983.  See *Rodriguez v. Furtado*, 410 Mass. 878, 881, 885 (1991).  As set forth above, the individual defendants are entitled to qualified immunity as to Count II.

C.    Counts III Through V Fail to State Claims Against the "Uxbridge Police Department" Upon Which Relief Can Be Granted.

Counts III through V purport to state claims for the intentional torts of false arrest, false imprisonment, and malicious prosecution.  It is beyond dispute that municipalities are not liable for claims arising out of intentional torts.  See M.G.L. c. 258, § 10(c); *Nelson v. Salem State College*, 446 Mass. 525, 537 n.9 (2006); *Connerty v. Metropolitan Dist. Com.*, 398 Mass. 140, 149 n.8 (1986) (§ 10(c) applies to all intentional torts); *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 596 (2001).

M.G.L. c. 258, § 10(c) precludes the imposition of liability for:

> (c) any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations[.]

M.G.L. c. 258, § 10(c) (emphasis added).  The Town cannot be held liable for the intentional torts purportedly alleged in the Complaint and, therefore, the Counts III through V fail to state claims against it upon which relief can be granted.

D.    Counts III and IV Fail to State Claims Against the Individual Defendants Upon Which Relief Can Be Granted.

Plaintiff's intentional tort claims require him to identify the actions of the individual defendants that he alleges caused him harm.  Neither Lieutenant Emerick nor Chief Freitas arrested plaintiff and they cannot be liable to him for either false arrest or false imprisonment. See generally,  *Goddard v. Kelley*, 629 F. Supp. 2d 115, 129 (D. Mass. 2009); *Jonielunas v. City of Worcester Police Dep't*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004).

As to officer Morrissette, Counts III (false arrest) and IV (false imprisonment) both fail because plaintiff's arrest was supported by probable cause.  As to false arrest:

> Under Massachusetts common law, in order for an arrest to be lawful, a police officer must have "reasonable grounds" for making the arrest. See *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989); *Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 323-26, 268 N.E.2d 860, 862-64 (1971). "The requirement of reasonable grounds has been held to be substantially overlapping with the constitutional requirement of probable cause." *Santiago*, 891 F.2d at 383, citing *Wagenmann*, 829 F.2d 196, 205-06; *Coblyn*, 359 Mass, at 323-26, 268 N.E.2d at 862-64.

*Jonielunas v. City of Worcester Police Dep't*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004). Similarly, "A police officer is liable for false imprisonment if he arrests, or causes the arrest, of the plaintiff, without probable cause." *Goddard v. Kelley*, 629 F. Supp. 2d 115, 129 (D. Mass. 2009), citing, *Jonielunas*, *supra*.  As set forth above, plaintiff's arrest was supported by probable cause.  Therefore, Counts III and IV fail to state claims upon which relief can be granted.

E.      Count V Fails to State Claims Against the Individual Defendants Upon Which Relief Can Be Granted

Count V attempts to state common law claims for malicious prosecution.  The elements of a malicious prosecution claim are, "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001), citing *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991).  Again, as set forth above, probable cause

existed to believe that plaintiff had committed the crimes of assault and battery with a dangerous weapon and assault and battery and, therefore, Count V fails.   See Complaint at ¶ 78. Additionally, the Complaint fails to allege facts from which it can be inferred that any defendant was involved in the prosecution of the plaintiff or made any decisions with respect to same. There are also no facts from which it can reasonably be inferred that any defendant herein acted with malice.  See *Murrell v. Petruzziello*, 2013 U.S. Dist. LEXIS 99758, 12-13 (D. Mass. July 17, 2013).  Therefore, Count V fails to state claims upon which relief can be granted.

## CONCLUSION

Wherefore, for the foregoing reasons, the instant motion should be allowed.

## CERIFICATE OF CONSULTATION PURSUANT TO LOCAL RULE 7.1

On November 6, 2013, the undersigned David S. Lawless, Esq. and counsel for the plaintiff, Patrick M. Groulx, Esq., conferred via telephone in a good faith effort to narrow or resolve the issues which form the subject matter of the instant motion.

Respectfully submitted,

THE DEFENDANTS,
THE TOWN OF UXBRIDGE,
"UXBRIDGE POLICE DEPARMENT,"
PETER EMERICK,
SCOTT FREITAS, AND
JOSIAH MORRISSETTE

By ____*/s/ Nancy Frankel Pelletier, Esq.*____
Nancy Frankel Pelletier, Esq.- BBO# 544402

By ____/s/ David S. Lawless, Esq.____
David S. Lawless, Esq.- BBO# 664754
Both of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 452-0342

574152

npelletier@robinsondonovan.com
dlawless@robinsondonvoan.com

574152

19

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 8th day of November, 2013.

*/s/ Nancy Frankel Pelletier, Esq.*
Nancy Frankel Pelletier, Esq.

574152