|  |  |
|---|---|
| KEVIN HAYES,<br><br>    Plaintiff,<br><br>    v.<br><br>THE TOWN OF UXBRIDGE,<br>UXBRIDGE POLICE DEPARTMENT,<br>PETER EMERICK, individually and in his official capacity as Interim Chief of Police of the Uxbridge Police Department, SCOTT FREITAS, individually and in his official capacity as a former Chief of Police of the Uxbridge Police Department, JOSIAH MORRISSETTE, individually and in his official capacity as an Officer of the Uxbridge Police Department, and<br>THOMAS J. ALEXANDER,<br><br>    Defendants. | CIVIL ACTION<br>NO. 13-40102-TSH |

**MEMORANDUM OF DECISION ON DEFENDANTS THE TOWN OF UXBRIDGE, PETER EMERICK, SCOTT FREITAS AND JOSIAH MORISSETTE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Docket No. 30)**
**May 8, 2014**

HILLMAN, D.J.

## Introduction

Plaintiff Kevin Hayes ("Plaintiff") brings claims against the Town of Uxbridge ("Uxbridge"), Peter Emerick ("Emerick"), Scott Freitas ("Freitas"), and Josiah Morrissette ("Morrissette") (collectively, "Defendants") for violating 42 U.S.C. s. 1983 (Count I). Plaintiff also brought claims against Emerick, Freitas, and Morrissette for violating M.G.L. c. 12 s. 11H and 11I (Count II), false arrest (Count III), false imprisonment (Count IV), and malicious

1

prosecution (Count V).[1] Defendants moved to dismiss all claims against them. On April 18, 2014 this Court heard oral argument on that motion, at which time Plaintiff conceded that all claims should be dismissed except for the following: violation of 42 U.S.C. s. 1983 (Count I) against Freitas and Morrissette, and false arrest (Count III) and false imprisonment (Count IV) against Morrissette. This memorandum of decision addresses these remaining claims.

## Facts

The following facts are taken from Plaintiff's amended complaint (the "Complaint") (Docket No. 28).

In November 2010, Plaintiff called the police after Shayla Norris ("Norris") trespassed onto a private dirt driveway that is part of Plaintiffs' property. The responding officer, Officer Sullivan, advised Plaintiff to install "No Trespassing" signs on his property, which he did. On April 14, 2011 Plaintiff noticed a vehicle driving down his driveway. He knocked on the drivers' side window and informed the driver, Norris' boyfriend Thomas J. Alexander ("Alexander") that the driveway was private. Alexander yelled at Plaintiff, slammed the drivers' side door, spun his tires, and sped forward. Plaintiff called the Uxbridge police and gave a verbal report of the incident, which he later repeated to Morrissette, the responding Uxbridge police officer. The next day Plaintiff went to the Uxbridge Police Department to drop off a statement of the incident that he had written at Morrissette's request. Morrissette advised the Plaintiff that he considered him the aggressor and that he had crafted his report such that Plaintiff would be unable to press charges.

Several days following this incident, Plaintiff again saw Alexander spinning his tires and tearing up the driveway. Plaintiff took a photograph of the vehicle's license plate and again

---

[1] The Complaint also brings claims against Thomas J. Alexander, but these claims are not the subject of the present motion.

reported the incident to the Uxbridge Police. Plaintiff spoke with then-Lieutenant Emerick, who stated that he would follow up. The police charged Alexander with assault and battery and criminal trespassing. Alexander was ordered not to enter onto Plaintiff's property.

Hayes installed a home security system with cameras on the outisde of his home to monitor any improper use of the driveway. On May 20, 2011, at approximately 9:00 pm, Alexander knocked on Plaintiff's door, demanded to know why Plaintiff had filed criminal charges against him, and stated that he would "kick [Plaintiff's] ass" if Plaintiff did not drop the charges. Plaintiff proceeded back into his home and told his girlfriend Danielle Gardner ("Gardner") to call the police. Alexander followed the Plaintiff into his home and stood in Plaintiff's living room screaming. Plaintiff grabbed a can of pepper spray and a strobe light, returned to the living room, and told Alexander to exit his home. Alexander charged the Plaintiff and Plaintiff sprayed him with the pepper spray. Alexander ran out of the house, threatening to kill Plaintiff. Alexander then ran to the entrance of the house again, and Plaintiff again sprayed him. Alexander walked to the Plaintiff's yard and Plaintiff followed him outside, using the strobe light to coax Alexander off the property.

Gardner called 911 and informed the dispatched that Alexander had trespassed onto Plaintiff's property. Soon thereafter, Morrissette and other Uxbridge police officers arrived. Morrissette knew that Alexander was in violation of the no-trespass order. When the Uxbridge Police arrived, Norris ran onto the property. Morrissette asked what happened and Norris, who was not an eyewitness to the events, stated that Alexander had been pepper sprayed by Plaintiff, and claimed that Plaintiff continued to spray Alexander while Alexander was lying prone on the ground in the yard. Morrissette did not see Plaintiff pepper spray Alexander outside of the property.

Morrissette proceeded to arrest Plaintiff. He was handcuffed and the items in his possession, including the can of pepper spray and a handgun were seized. Plaintiff informed Morrissette of the camera system attached to the house and offered the video of the incident to the Uxbridge Police, but both Morrissette and assisting Sergeant Wilson declined to view it, telling the Plaintiff that he had gone "overboard." Neither Morrissette nor Sergeant Wilson questioned Gardner about the events. Following his release from custody, Plaintiff called the Uxbridge Police and offered to deliver a copy of the video of the incident, which offer was declined.

Plaintiff was charged with Assault and Battery with a Dangerous Weapon and misdemeanor Assault and Battery. Alexander was charged with criminal trespassing. Ultimately, the prosecutor viewed the video of the incident and the charges against Plaintiff were dropped.

Plaintiff was advised in writing at the time of his arrest that because he was arrested for a felony while in possession of a firearm that his license to carry ("LTC") was suspended. Following the dismissal of the charges, the Uxbridge Police refused to reinstate his LTC. Plaintiff brought an action in the Uxbridge District Court under M.G.L. c. 140 s. 131(f). After a hearing, the Court found that there were no reasonable grounds for suspending or revoking Plaintiff's LTC and that Plaintiff's LTC should be returned.

## Discussion

*Standard of Review*

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must evince the requisite factual detail to establish a *plausible* claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). In other words, "only a

4

complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 68 (1st Cir. 2000). The court may consider "only facts and documents that are part of or incorporated into the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

*Morrissette*

Morrissette argues that the remaining counts against him (Counts I, III, and IV) should be dismissed because Plaintiff's arrest was based on probable cause, Plaintiff was not unconstitutionally deprived of the gun and pepper spray, and the claim is barred by the doctrine of qualified immunity. Count I alleges a constitutional violation, and Counts III and IV are for false arrest and false imprisonment, respectively. Contrary to Plaintiff's assertion, the existence of probable cause can be determined on a motion to dismiss. *See, e.g.*, *Macdonald v. Town of Eastham,* 946 F. Supp. 2d 235, 244 (D. Mass. 2013) *aff'd*, 2014 WL 944707 (1st Cir. Mar. 12, 2014) *(*granting motion to dismiss common-law false imprisonment and malicious prosecution claims because officers' actions were supported by probable cause).

To prevail on a s. 1983 claim based on an alleged false arrest, a "plaintiff must show at a minimum that the arresting officers acted without probable cause." *Mann v. Cannon*, 731 F.2d 54, 62 (1st Cir.1984). Similarly, Plaintiff's claims for false imprisonment and false arrest can only succeed if the officers lacked probable cause for the arrest. *Philbrook v. Perrigo*, 637 F. Supp. 2d 48, 53 (D. Mass. 2009) (noting that the existence of probable cause to make an arrest is a defense to claims of false arrest or imprisonment). "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a

reasonably prudent person would believe the suspect had committed or was committing a crime." *United States v. Vongkaysone*, 434 F.3d 68, 73-74 (1st Cir. 2006). Plaintiff was arrested and charged with assault and battery with a dangerous weapon. Pepper spray is considered a dangerous weapon. *See, e.g.* People v. Elliott, 299 Ill. App. 3d 766, 773, 702 N.E.2d 643, 648 (1998) ("we do not find any error in the trial court's factual determination that pepper spray is a dangerous weapon"). Morrissette arrived, knowing there was a history of animus between Plaintiff and Alexander. He learned that Alexander had been pepper sprayed, and was told by Norris that Plaintiff had continued to use the pepper spray against Alexander while Alexander lay prone on the ground outside. Despite the history between Morrissette and Plaintiff, Morrissette chose to accept Norris' version of the event as accurate. This assessment, together with the fact that Plaintiff was carrying both the pepper spray and a Ruger pistol when Morrissette arrived allowed Morrissette to reasonably believe Plaintiff had committed assault and battery. While it may have been prudent for Morrissette to do a more complete investigation before arresting Plaintiff, I cannot substitute my judgment for that of a police officer on the scene. Thus Morrissette had probable cause to arrest Plaintiff. The existence of probable cause precludes liability on the false arrest, and false imprisonment claims, and precludes liability on the s. 1983 claim to the extent that claim is based on the arrest.[2]

Though Morrissette did not accept Plaintiff's offer to look at the surveillance video or interview Gardner on the scene, the First Circuit has "rejected the proposition that a police

---

[2] This Court notes that the claims against Morrissette, to the extent they are based on the arrest, should also be dismissed due to qualified immunity. Qualified immunity protects public officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). A defendant is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed to arrest." *Cox*, 391 F.3d at 31. Qualified immunity requires a "somewhat lesser showing" than probable cause; where the "presence of probable cause if arguable or subject to legitimate question, qualified immunity will attach." *Id*.

officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest." *Holder v. Town Of Sandown*, 585 F.3d 500, 505 (1st Cir. 2009). Instead, "an officer normally may terminate [his] investigation when [he] accumulates facts that demonstrate sufficient probable cause." *Id*. (internal quotations omitted). This is what Morrissette did.

At oral argument, Plaintiff argued that some pre-existing animus between Plaintiff and Morrissette affects the probable cause determination. This Court disagrees. First, Plaintiff's complaint does not contain sufficient allegations of such animus. Second, even if such animus existed, Morrissette still had probable cause to arrest, that is, based upon the facts that he was confronted with reasonable officer would be led to believe Plaintiff had committed assault and battery. "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-71, 105 S. Ct. 2778 (1985) (quoting *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1722 (1978)). Any subjective motivation Morrissette may have had in arresting Plaintiff does not change the probable cause determination. *Holland v. City of Portland*, 102 F.3d 6, 10 (1st Cir. 1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *Davila-Lynch v. City of Brockton*, 2011 WL 4072092 (D. Mass. 2011) ("a pretextual arrest, if supported by probable cause, will not support a claim of false arrest."). Even assuming the unpled pre-existing animus, the factual circumstances Morrissette confronted provided sufficient probable cause.

To the extent Plaintiff's s. 1983 claim against Morrissette is based on the alleged deprivation of property, specifically of the pepper spray and the gun, Plaintiff argues that "to the

extent that Morrissette's arrest and seizure were unreasonable and unsupported by probable cause, Morrissette's revocation of Hayes's LTC and the seizure of Hayes's property, along with his failure to return them after the charges were dropped, are actionable." As explained above, however, Morrissette's actions were based on probable cause.[3] Moreover, there is nothing in the complaint to suggest that Morrissette had any role or authority in failing to return Plaintiff's LTC or property.[4] Therefore Morrissette is no more liable for violating s. 1983 for the seizure of Plaintiff's property than he is for the arrest itself. Counts I, III and IV will therefore be dismissed as to Morrissette.

*Freitas*

The only claim remaining against Freitas, Count I, alleges violations of 42 U.S.C s. 1983 for both Plaintiff's arrest and the deprivation of his property. As to the arrest, Freitas was not personally involved and did not order the arrest. Plaintiff does not dispute this point. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009). Thus for Frietas to be liable, Plaintiff would need to allege the individuals, through their "own individual actions, [have] violated the Constitution." *Id*. Here there is simply no allegation that Freitas violated the Constitution with regard to Plaintiff's arrest. Moreover, as explained above, the arrest was based on probable cause, so there can be no liability for the arrest under s. 1983. *Mann*, 731 F.2d at 62.

---

[3] It is also worth noting that to the extent Plaintiff's constitutional claim is based on the lack of pre-deprivation due process, this has been rejected by the First Circuit. *Hightower v. City of Boston*, 693 F.3d 61, 85 (1st Cir. 2012) ("The revocation of a firearms license…without a predeprivation hearing is justified by concerns as to public health and safety.").

[4] Plaintiff's brief, though not the Complaint, claims that Morrissette was the licensing officer and is the one who revoked the LTC after the arrest and seized the property. The brief charges Frietas with failing to return the LTC, however, and acknowledges that if the arrest was based on probable cause, Morrissette's actions regarding the pepper spray and ruger were proper.

It is alleged in the Complaint that Freitas suspended Plaintiff's LTC. Defendants argue that Freitas is entitled to qualified immunity on Count I regarding the deprivation of the LTC because a reasonable chief of police could conclude that Plaintiff was not a "suitable person" to carry a firearm and it was not clearly established at the time of the alleged suspension and revocation that such would violate Plaintiff's constitutional rights. Under M.G.L. c. 140 s. 131(f) an LTC "may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license." Plaintiff was advised that the suspension of his LTC was a result of his arrest for a felony. Plaintiff acknowledges that is was at least arguably reasonable for the LTC to be suspended after the felony arrest. Plaintiff contends, however, that it was arbitrary and capricious for Freitas to refuse to return the LTC and firearm after the charges against Plaintiff were dropped.

Qualified immunity protects public officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). In this case, the statute that provides for the suspension of an LTC does not define what constitutes a "suitable person," nor had the Massachusetts Courts had many occasions to interpret the "suitable person" requirement. *Hightower v. City of Boston*, 693 F.3d 61, 78 (1st Cir. 2012).

In a series of cases decided before the Supreme Court's decision in *District of Columbia v. Heller*, Massachusetts courts had stated that "the licensing authority is given considerable latitude" in determining who is a suitable person. *Id.*; *see Ruggiero v. Police Comm'r*, 18 Mass.App.Ct. 256, 464 N.E.2d 104, 107 (1984); *Howard v. Chief of Police*, 59 Mass.App.Ct. 901, 794 N.E.2d 604, 606 (2003) ("The 'suitable person' standard vests in the chief broad

discretion or 'considerable latitude.'" (quoting *Ruggiero*, 464 N.E.2d at 107)); *Godfrey v. Chief of Police*, 35 Mass.App.Ct. 42, 616 N.E.2d 485, 487 (1993) (same); *MacNutt v. Police Comm'r*, 30 Mass.App.Ct. 632, 572 N.E.2d 577, 580 (1991) (noting "[t]he broad grant of discretion implicit in a statute which lacks guidelines"). The courts have recognized, however, that this discretion was not unlimited. *Hightower*, 693 F.2d at 79; *see MacNutt*, 572 N.E.2d at 580 (noting that the grant of discretion "may be limited properly by judicial interpretation' to measures which are not arbitrary or capricious"); *Stavis v. Carney*, 12 Mass.L.Rep. 3, 2000 WL 1170090, at *4–5 (Mass.Super.Ct.2000) ("The standard for issuing licenses to carry under § 131 must be interpreted in accordance with the intent of the legislature…The goal of firearms legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons.). At the time of the suspension, no Massachusetts appellate court had construed the "suitable person" requirement in a published opinion in light of the Supreme Court cases *Heller* and *McDonald v. City of Chicago*. *Hightower*, 693 F.2d at 79. Considering this, Freitas is entitled to qualified immunity, as he should not have known, based on the lack of guidance regarding this law, that he was violating Plaintiff's "clearly defined" rights by finding him to be an unsuitable person and therefore failing to return his LTC. As such, Count I is dismissed as to Freitas.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss is ***granted***.
SO ORDERED.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**